IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Virginia

MELISSA P. VAUGHAN,

     Plaintiff,

v.                                        Civil Action No. 3:09cv364

THE FIRST LIBERTY INSURANCE
CORP.,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Motion to Dismiss (Docket No. 3) filed by the Defendant, The First Liberty Insurance Company, pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) the action is time-barred; and (2) the Amended Complaint fails to allege facts required to recover replacement value for property that was lost in a house fire. For the reasons discussed below, the motion to dismiss will be denied in part, and granted in part.

## BACKGROUND

On January 10, 2007, a fire damaged the Ashland, Virginia home, of Melissa Vaughan. First Liberty insured Vaughan's home. Am. Compl. ¶¶ 5-7. The insurance policy, as required by Virginia law, included the language of Va. Code § 38.2-2105,

covering "[s]tandard provisions, conditions, stipulations and agreements" for fire insurance.  Id.

Vaughan submitted to First Liberty claims for both real and personal property losses arising out of the fire.  The two parties soon settled the real property damage claim.  Vaughan then submitted claims for over $300,000 in personal property losses, a significant portion of which First Liberty has refused to pay.  Am. Compl. ¶¶ 8-12.  Both parties agree that the policy covers the cost of *replacing* her personal property, not just the *actual cash value* of this property.  Id. at 12; Def. Mem. at 2. According to the original Complaint,[1] Vaughan submitted two lists of personal property, one in May 2007 and another in July 2007, then submitted her itemized cost estimates for both lists. Compl. ¶¶ 5-8.  In October 2007, First Liberty paid Vaughan approximately $90,000, which was the insurer's estimate of the actual cash value of the personal property on the first list. Id. ¶ 9.  First Liberty did not offer any payment for the items on the second list.  Id.

Vaughan contended that she was owed the difference between replacement value and the $90,000 cash value payment for the

---

[1]  For whatever reason, the Amended Complaint leaves out significant factual details that were included in the original Complaint; thus, the original Complaint is referenced here notwithstanding the fact that the Amended Complaint superseded it.

2

items on the first list, as well as full replacement value for the items on the second list.   Id. ¶ 11.   Appraisers for the parties "attempted to work this matter out" between October 2007 until "sometime in 2008."   Id. ¶ 10.

The appraisers reached an impasse.   On August 5, 2008, Vaughan petitioned the Circuit Court of Hanover County, Virginia, to appoint an umpire to resolve the dispute between her appraiser and the insurer's appraiser, pursuant to Va. Code § 38.2-2105 as incorporated into the policy.[2]   Def. Mot. Exh. 3. For whatever reason, Vaughan moved to nonsuit the umpire petition, and her motion was granted by an Order entered on

---

[2] Section 38.2-2105 of the Virginia Code, as repeated in the policy, states, in pertinent part:

> In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.

3

January 23, 2009.  Id. Exh. 4.  On or about May 6, 2009, Vaughan filed suit ("this action") in the Circuit Court of Hanover County alleging breach of contract against First Liberty, which filed a notice of removal to federal court on June 9, 2009. First Liberty moved to dismiss the Complaint on June 25, 2009; Vaughan was subsequently granted leave to file an Amended Complaint and did so on August 24, 2009.

Vaughan seeks relief in three separate counts.  Count I of the Amended Complaint, entitled "Breach of Contract -- Replacement Value," seeks the full replacement value of each item on both lists of personal property, less the $90,000 already paid.  Am. Compl. ¶¶ 15-20.  Count II, entitled "Breach of Contract -- Actual Cash Value," seeks, alternatively, the actual cash value of each item on both lists of personal property, again less the $90,000 already paid.  Id. ¶¶ 21-26. Count III requests "Declaratory Relief."  Id. ¶¶ 27-30.  Each count incorporates general allegations that First Liberty "has made unwarranted, inappropriate, and unjustified requests for information from" Vaughan, and that it has delayed making payments "in bad faith."  Id. ¶¶ 13-14.

4

The Motion to Dismiss[3] seeks dismissal, first, because the action is time-barred, and second, because Vaughan has not met a condition precedent to recovery under the policy, namely that she has sought replacement value for property without first replacing it.[4]  Id. at 1; 10-15.

### DISCUSSION

#### a. Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) seeks to test the legal sufficiency of the factual allegations made in the Complaint.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Id.  As the Supreme Court held in Bell Atlantic v. Twombly, 550 U.S. 544 (2007), the pleading standard that Rule 8(a) announces does not require "detailed factual allegations," but it demands more than an unadorned accusation.  Id. at 555.  A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the

---

[3] Although the Motion to Dismiss was originally filed on June 25, 2009 in response to the original Complaint, the parties have treated the motion as filed in response to the Amended Complaint and the Court, therefore, deems it filed in response to the Amended Complaint.

[4] First Liberty is no longer pursuing its third contention, that Vaughan failed to allege "that she submitted a claim for replacement cost within six months of receiving a payment for the cash value" of the List 1 contents.  See Pl. Supp. Brief of Aug. 28, 2009, Exh. A.

elements of a cause of action will not do." <u>Id.</u>  Nor does a complaint suffice if it tenders only "naked assertion[s]" devoid of "further factual enhancement." <u>Id.</u> at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted by the court as true, to "state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  A claim has facial "plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u> at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Id.</u>  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> at 557.  Nevertheless, in <u>Twombly</u>, the Supreme Court repeatedly emphasized that alleging plausible grounds for a claim "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to prove the alleged claim. <u>Id.</u> at 556.  This pleading standard governs "all civil actions and proceedings in the United States district courts." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1953 (2009).

6

As explained in <u>Church v. Wachovia Securities, Inc.</u>, 2008 U.S. Dist. LEXIS 104995 (W.D.N.C. Dec. 30, 2008), "[t]he issue of whether a cause of action is barred by the statute of limitations usually presents a mixed question of law and fact for the Court." <u>Id.</u> at *28 (citations omitted). "However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law." <u>Id.</u> Because the pertinent dates[5] are not disputed by either party, the application of the statute of limitations presents a purely legal question in this action.

**b. Applicable Law**

Sitting in diversity, this Court applies Virginia substantive law. <u>Erie Railroad v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>Castillo v. Emergency Medical Associates</u>, 372 F.3d 643, 646 (4th Cir. 2004). This includes both the Virginia statute of limitations for fire insurance policies as codified in Va. Code § 38.2-2105, as well as Virginia statutory and case law respecting actions on an insurance policy.

---

[5] The pertinent dates are: (1) January 10, 2007, the date of the fire; (2) August 5, 2008, the date the umpire petition was granted; (3) January 23, 2009, the date the umpire petition was nonsuited; and (4) May 6, 2009, the date this action was filed in state court.

### c. The Plaintiff's Claims are Not Time-Barred

Section 38.2-2105 of the Virginia Code gives a fire insurance policy holder two years from the date of loss to take legal action on the policy. It operates as a statute of limitations specific to actions for claims under a fire insurance policy. The loss (the fire) occurred on or about January 10, 2007. Vaughan did not file this action until May 6, 2009. Thus, more than two years have passed, and the action is barred by the statute of limitations, unless some event has occurred to toll it.

Vaughan asserts that, when the Circuit Court of Hanover County granted her motion to nonsuit the umpire petition, the statute of limitations on this action was tolled for six months. Pursuant to Va. Code § 8.01-229(E)(3), granting of a voluntary nonsuit (as defined id. § 8.01-380) tolls "the statute of limitations with respect to such action." The Order granting the nonsuit was entered on January 23, 2009, and this action was filed on May 6, 2009, well within the six-month window provided by § 8.01-229.

But, counters First Liberty, the "action" that Vaughan nonsuited is not one that operates to toll the statute of limitations on this action. The nonsuit statute, argues First Liberty, only applies to "a nonsuit as to any *cause of action or*

8

*claim.*" Id. § 8.01-380 (emphasis added). The argument finds support in a decision from this district, which held that a petition for appointment of an umpire pursuant to § 38.2-2105 is not a type of "action" that tolls the statute of limitations. Bilicki v. Windsor-Mount Joy Mutual Insurance Co., 954 F. Supp. 129, 132 (E.D. Va. 1996).

However, the circumstances in Bilicki were somewhat different from those presented here. Bilicki did not actually consider what happens when an umpire proceeding is nonsuited because in that case the plaintiffs never nonsuited the umpire proceeding before filing their claim on the policy. Bilicki also was decided at the summary judgment stage, id. at 130, although that matters little, because applying a statute of limitations there, as here, was a purely legal endeavor.

It is true, as Vaughan argues, that Bilicki has faced criticism for its other holding, that the two-year window in which to sue was a mandate of contractual language rather than statutory language, and thus could not be tolled, as could a typical statute of limitations. Bilicki so held notwithstanding that Va. Code § 38.2-2105 mandated the exact language to be used in the contract. Two years after Bilicki, the Supreme Court of Virginia decided Massie v. Blue Cross & Blue Shield of Virginia, 256 Va. 161, 500 S.E.2d 509 (1998), which distinguished between

9

*contractual* time limitations on filing suit, which *are not* subject to statutes of limitations, and *statutory* time limitations on filing suit, which *are* subject to statutes of limitations.    Two subsequent cases, each citing <u>Massie</u>, explicitly disavowed the holding of <u>Bilicki</u> on that point, finding the mandatory language of § 38.2-2105 to be statutory, rather than contractual, because it reflects no separate intent of the parties. <u>Zaeno International, Inc. v. State Farm Fire & Casualty</u>, 152 F. Supp. 2d 882, 885-86 (E.D. Va. 2001); <u>Erie Insurance Exchange v. Clover</u>, 2000 U.S. Dist. LEXIS 14282, at *12 (E.D. Va. Sept. 1, 2000) ("To consider the § 38.2-2105 statute of limitations as contractual rather than statutory, merely because of its presence in a contract -- which is required by the statute -- would be a legal fiction."). Vaughan seizes upon the criticism of <u>Bilicki</u> (citing <u>Zaeno</u> and <u>Erie Insurance</u>) as evidence of <u>Bilicki</u>'s obsolescence.    Pl. Oppo. Mem. at 6.

However, the argument that one part of <u>Bilicki</u> has been altered by a subsequent decision of the Supreme Court of Virginia does not serve to dispose of its other holding, the one here at issue.    Thus, Vaughan also points out that <u>Bilicki</u> did not involve a nonsuited action, whereas <u>Zaeno</u> and <u>Erie Insurance</u> both found that a nonsuit (or, in <u>Erie Insurance</u>, a voluntary

10

dismissal pursuant to Fed. R. Civ. P. 41(a)) tolled the statute of limitations. In both Zaeno and Erie Insurance, however, the original nonsuits involved claims for damages. Zaeno at 883; Erie Insurance at *2. Just as Bilicki did not address a nonsuit, neither did Zaeno or Erie Insurance address whether an umpire proceeding is an "action" that, when nonsuited, operates to toll the statute of limitations. Bilicki, thus, remains the only Virginia decision, albeit one decided by a federal court, to have addressed that question. Hence, Vaughan of necessity turns elsewhere to find support for her argument that the statute of limitations can be tolled by an action such as the umpire proceeding in question. Specifically, she relies primarily on Hatfill v. New York Times Co., 416 F.3d 320 (4th Cir. 2005).

In Hatfill, the Fourth Circuit reviewed the district court's dismissal of a defamation suit that had previously been nonsuited in state court. Id. at 328-29. In the second suit, filed in federal court, the plaintiff had added allegations respecting particular publications that were not specifically identified in the initial suit. Id. The district court dismissed the count containing these allegations because "the claims concerning discrete statements were not preserved in the

11

state-court complaint." Id. at 329. The Fourth Circuit reversed.

The Court of Appeals began its analysis by observing that under Va. Code § 8.01-380, which defines a nonsuit, "a plaintiff [may] take a nonsuit on any 'cause of action,' [which] the Virginia Supreme Court defines [as] 'a set of facts which, under the substantive law, may give rise to one or more rights of action.'" Id. at 335 (quoting Roller v. Basic Construction Co., 238 Va. 321, 327, 384 S.E. 2d 323, 326 (1988)). Next, quoting Stone v. Ethan Allen, Inc., 232 Va. 365, 368, 350 S.E.2d 629, 631 (1986), which distinguished rights of action from causes of action, Hatfill explained that, "[a] right of action is a remedial right to presently enforce a cause of action. There can be no right of action until there is a cause of action." Hatfill, 416 F.3d at 335. Hatfill found that the tolling provision in Va. Code § 8.01-229 saved "all rights of action arising from that cause of action," the cause of action being defamation, and the plaintiff's rights of action being his first and second lawsuits, each of which alleged somewhat different facts. Hatfill at 335.

Vaughan contends that the Fourth Circuit's decision in Hatfill necessitates a result different than that produced by the earlier decision in Bilicki. Analogously to Hatfill, says

12

Vaughan, an umpire proceeding is but one right of action stemming from a greater cause of action, that of recovering under the policy. When this earlier right of action was nonsuited in favor of the present right of action, argues Vaughan, the statute of limitations was tolled pursuant to Va. Code §§ 8.01-229(E)(3) and 8.01-380.

That analysis is the correct one. Vaughan asserts three new rights of action -- two for breach of contract, and one for declaratory relief -- all of them arising out of the same set of operative facts as the umpire proceeding. And given the broad scope of an "action" as defined by Virginia law, which includes "all civil proceedings whether upon claims at law, in equity, or statutory in nature," id. § 8.01-2, the umpire proceeding is an "action" that was nonsuited. Thus, the act of nonsuiting that "action," as in Hatfill, tolled the statute of limitations for "all rights of action arising from that cause of action," id. at 335, including her present right of action for breach of contract and declaratory relief in this action.

The fact that this action seeks "different remedies" than the umpire proceeding, Bilicki, 954 F. Supp. at 132, in the sense that the state court only had the power to appoint an umpire while this Court may award damages and issue declaratory relief is of no moment to the analysis. The endgame is the

same: Vaughan seeks money under her fire insurance policy for property lost or damaged in a fire. This action and the umpire proceeding are two separate rights of action stemming from one cause of action, and these rights of action may request a variety of remedies. After Hatfill, there is no warrant to continue to apply the "different remedies" rationale on which Bilicki was decided.

Furthermore, the Circuit Court of Hanover County issued an order granting a "nonsuit" of Vaughan's action. In issuing that order, a trial court of the Commonwealth applied its own substantive law. A federal court should be hesitant to change the meaning of actions taken by its state court counterparts. To hold the "nonsuit" that the state court granted to Vaughan is not really a "nonsuit" would be to discount the plain language of both the state court order and the nonsuit statute, Va. Code § 8.01-380.

Moreover, Virginia case law indicates that "tolling statute[s] . . . 'are highly remedial and should be liberally construed in furtherance of their purposes, and are not to be frittered away by any narrow construction.'" Baker v. Zirkle, 226 Va. 7, 13, 307 S.E.2d 234, 237 (Va. 1983) (citations omitted). And, "the basic purpose reflected in the tolling rule [is to] sav[e] the right of action for plaintiffs who, without

14

fault, have been unable to obtain an adjudication on the merits." Atkins v. Schmutz Manufacturing Co., 435 F.2d 527, 530 (4th Cir. 1970). In this case, Vaughan has diligently pursued her claims, in the face of repeated rebuffs from her insurer, from shortly after the fire through the present day. Liberal construction of the tolling statutes, to include an umpire proceeding as an action the nonsuit of which tolls her right to file this action for damages, is thus appropriate.[6]

### d. The Plaintiff was Required to Replace Her Damaged Property Before She was Entitled to Recover Under the Policy

Because the statute of limitations does not bar Vaughan's action, it is necessary next to consider whether Virginia law requires Vaughan to replace her lost items before being entitled to the replacement cost pursuant to the policy. Unfortunately, it does.

In Whitmer v. Graphic Arts Mutual Insurance Co., 242 Va. 349, 410 S.E.2d 642 (1991), the Supreme Court of Virginia

[6] As a final note, a contrary holding -- that the nonsuit of an umpire proceeding does not toll the statute of limitations -- could have perverse consequences because such a rule could serve as an incentive to unscrupulous insurers to dispute claim amounts, driving the parties to engage in potentially drawn-out umpire proceedings, and ultimately delaying action until the statute of limitations has run, at which point the insurer could deny the claim and leave the insured party with no recourse. A rule such as that would not serve the public policy of the Commonwealth as articulated by its Supreme Court in Baker and recognized by the Fourth Circuit in Atkins.

clearly stated that a policy can require the insured to replace the destroyed property before paying its replacement cost. When the plaintiff contended that "he did not have the financial ability to replace the destroyed property without prior payment of its actual cash value," the Supreme Court of Virginia observed that: "[t]here is no policy provision to support this contention, and it is simply irrelevant." Whitmer, 242 Va. at 356. Accord Tiger Fibers, LLC v. Aspen Specialty Insurance Co., 594 F. Supp 2d 630, 653 (E.D. Va. 2009) (requiring repair or replacement of damaged property before an insured was entitled to "recoverable depreciation" costs).[7]

Vaughan seeks to avoid the impact of Whitmer by relying on two decisions holding that certain conduct by the insurer may waive the insured's need to prove loss before recouping payment. Provident Life & Accident Insurance Co. v. Nicholson, 157 Va. 345, 352, 160 S.E. 2d 5, 7 (1931); Eden Corp. v. Utica Mutual Insurance Co., 350 F. Supp. 637, 643 (W.D. Va. 1972). Neither decision helps Vaughan's case. Both cases address the waiver of

---

[7] Tiger Fibers also refused to issue a declaratory judgment. "Plaintiffs seek in essence a declaration that if they comply with the contractual prerequisites, and actually repair or replace the lost or damaged property, they are entitled to 'recoverable depreciation' under the insurance policy." Id. at 653. The court found that this request did not pertain to "an actual controversy" because the defendant did not dispute its obligation to pay once the property was replaced. Id.

proof of *loss* requirements, and proof of loss is not at issue in this case. First Liberty, citing Whitmer, asserts that proof of property *replacement* is needed before it is obligated to pay. Neither of the cases cited by Vaughan address waiver of a proof of replacement requirement.

Vaughan contends that Whitmer is neither logical, fair, nor just. And, she certainly is right at least as to all but wealthy policyholders. This case illustrates Vaughan's point. The process begins when insurance companies market policies purportedly providing replacement value. For example, Liberty Mutual, First Liberty's parent, states, on its website under the heading of "Home Replacement Cost Calculator," that, "[b]y evaluating your home and insuring it correctly, you can rest assured that your property is protected in the event of a loss."[8] The replacement value policy bears the Orwellian name, "HOMEPROTECTOR PLUS." Def. Mem. Exh. 1, at 23. The insurer collects an enhanced premium[9] for offering replacement value instead of actual cash value.

---

[8] This website is available at available at http://home-insurance. libertymutual.com/home-policyholder-benefits.

[9] In this case, Vaughan bought replacement coverage that, on paper, provided $465,000 for replacing her personal property. Def. Mem. Exh. 1, p.2. She paid a "net premium" of $1,445. Id.

However, when an insured's house burns down and she has to replace all of the property she has lost, the insurer tells her that she will not be paid the promised replacement value because she has not replaced her property. "But I have no money with which to replace the property," she says, "until I receive what I am owed under the policy." "Too bad," says the insurer. "[S]imply irrelevant," says Virginia law (Whitmer, 242 Va. at 356). That scenario, which is precisely the one presented here, is, as Vaughan asserts, neither logical, fair, nor just.

It is illogical to believe that an insured pays a premium for a benefit that is really quite illusory because it is withdrawn when it is needed. It is neither fair nor just to allow an insurer to collect its premiums and allow it to escape the very coverage for which the insured paid unless the insured can first, on her own, make the very replacement for which she contracted and paid.

To counter Vaughan's rather obvious points, First Liberty, at oral argument, proffered the argument that an insured may take her insurance policy to a bank and get a loan or a line of credit to replace the damaged property, and then submit a claim for the replacement value. That proposition is, charitably put, meritless. To begin, the policy provides no security at all for a bank loan. Extending a loan under those circumstances would

18

require a tremendous leap of faith on the bank's part, particularly considering the very real possibility that the insured party's claims may be denied, as was Vaughan's claim for her second list of personal property. Imagine that Vaughan had taken her two lists of personal property and her insurance policy to the bank, and the bank had extended her a line of credit to cover the full replacement value up to her $465,150 policy limit.[10] Although First Liberty might have paid the full $193,000 replacement value for the first list of property (see Def. Response at 8), it has stated that it will not pay anything for property on the second list. That would leave the bank holding a loan (the funds of which already have been expended to replace the insured's property) that Vaughan could not repay because First Liberty denied her claim. It is simply unthinkable that a bank would make a loan secured only by the borrower's prospect of receiving the payment of an unsubmitted insurance claim. Perhaps that is why First Liberty offered no authority for this approach.

Even if the approach were practicable (and it is not), the First Liberty's proposed line-of-credit solution shifts the economic burden of coverage to the insured, who paid for a policy that covered replacement value, from the insurer, which

---

[10]     See Def. Mem. Exh. 1, at 2.

19

avoids having to pay anything but actual cash value (if it pays that), despite having collected a higher premium for its promise of "replacement value." That hardly serves the public policy of securing for insureds the benefits of the insurance coverage for which they have paid, a precept that supposedly animates Virginia's regulation of the insurance industry.[11]   See Virginia State Corporation Commission, Bureau of Insurance Home Page, http://www.scc.virginia.gov/division/boi/index.htm (listing, as the first element of the Bureau's "regulatory mission," "to ensure that citizens of the Commonwealth are provided with access to adequate and reliable insurance protection").

First Liberty's second contention at oral argument was that an insured party can submit a claim for actual cash value, use this money to replace her property, then file replacement value claims after the property has been replaced.[12]  That, of course, is not the coverage for which Vaughan contracted.  Moreover, that approach confronts insured parties, most of whom are

---

[11] Moreover, assuming that an insurer is obligated to pay replacement value, and receives its premium payments for that coverage, it is unclear why that insurer would have any interest in whether or not the property is actually replaced if the insurer has satisfactory proof of the replacement value.

[12] See Def. Response at 8-9 for arguments along similar lines. Indeed, this is the procedure envisioned by the policy.  See Def. Mem. Exh. 1 at 23-24.

neither wealthy, nor lawyers, nor familiar with recovering under insurance policies, with a practically insurmountable hurdle.

In the end, however, as much fault as can be found with the rule of Whitmer, it the law of Virginia, and this Court is obligated to apply it.  Policy decisions -- such as whether insurers may sell policies that promise replacement coverage while knowing full well that most parties will never be able to meet the requirements -- are within the purview of Virginia's legislature, or perhaps its State Corporation Commission, which regulates insurers.  Sitting in diversity, the Court can only apply the Virginia law to the facts.  That, in turn, necessitates that First Liberty's motion be granted to the extent that Vaughan's claims are governed by Whitmer.

### e. The Plaintiff Has an Outstanding Dispute Respecting the Items on List 2

The findings that Vaughan's claims are not barred by the statute of limitations, and that she may not recover replacement value unless she first proves that she has replaced her lost or damaged property, do not end the case.  Vaughan has claims for a considerable amount of property, notably the items on List 2, see Compl. ¶¶ 7-9, for which First Liberty has denied any liability, even for the actual cash value.  A disputed issue remains as to whether the Defendant must pay for the items on

21

List 2.  Although the claim is not pled with great detail, it is fairly self-evident, and is the type of claim which requires few facts for plausibility.

## III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Docket No. 3) will be granted in part and denied in part.  Count I, alleging breach of contract and seeking replacement value, is dismissed, without prejudice to refile if the Plaintiff replaces her property and provides evidence that she has done so.  As to Counts II and III, the Motion to Dismiss will be denied.

It is SO ORDERED.

_____/s/_____    *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  November 19, 2009